The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYCLE BARN, INC., a Washington corporation, d/b/a SMOKEY POINT CYCLE BARN

Plaintiff,

v.

ARCTIC CAT SALES INC., a Minnesota corporation,

Defendant.

Case No. C10-0035 MJP

**ORDER DENYING PLAINTIFF'S MOTION TO SUBMIT ADDITIONAL EVIDENCE AND GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter comes before the Court on Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 7.) Having reviewed the motion, Plaintiff's response (Dkt. No. 10), Defendant's reply (Dkt. No. 17), and all papers submitted in support thereof, the Court GRANTS the Defendant's motion for the reasons set forth below. In conjunction with its opposition to Defendant's motion to dismiss, Plaintiff filed a motion to submit additional evidence. (Dkt. No. 18.) Having reviewed the motion, Defendant's response (Dkt. No. 24), Plaintiff's reply (Dkt. No. 25), and all papers submitted in support thereof, the Court DENIES the Plaintiff's motion for the reasons set forth below.

**Background**

On January 1, 2003, Plaintiff Cycle Barn, Inc. ("Cycle Barn"), a motorsports dealer, and Defendant Arctic Cat Sales, Inc. ("Arctic Cat"), a motorsports manufacturer, entered into a

franchise agreement to sell motorsports vehicles and related items. (Amended Compl. (hereinafter "Compl.") ¶¶ 3.1, 3.2.) The parties agreed that upon termination of the franchise, Arctic Cat would have the "right, but not the obligation" to repurchase its products from Cycle Barn. (Dkt. No. 7 at 4; Stokke Decl., Ex. A ¶ 18; id. Ex. B ¶ 18.) Although the parties' final written contract had expired, their business relationship continued until "July and August 2009" when Cycle Barn unilaterally terminated the agreement. (Stokke Decl., Ex. B; Compl. ¶ 3.6.) Plaintiff alleges the relationship continued to be "governed by terms and conditions which [were] similar to the relevant provisions of the initial agreement." (Compl. ¶ 3.2.)

In July, 2003, the Washington State Legislature enacted R.C.W. 46.93, Motorsports Vehicles—Dealer and Manufacturer Franchises. Upon a manufacturer's termination of a franchise, the statute obligated the manufacturer to repurchase products remaining with its dealer. See R.C.W. § 46.93.080(1) (amended 2009). Manufacturers then had 90 days from when the dealers returned products to pay the dealers. See R.C.W. § 46.93.080(3) (amended 2009). On April 25, 2009, the Legislature amended the statute. See H.B. 1664, 61st Leg., Reg. Sess. (Wash. 2009). The current version became effective on July 26, 2009. See R.C.W. 46.93. The statute now obligates manufacturers to repurchase products upon franchise termination even if the dealer terminates, and the 90 day pay period begins at termination. See R.C.W. 46.93.080.

More than 90 days has elapsed since the "July and August, 2009" termination date. (Compl. ¶¶ 3.6, 3.7.) Arctic Cat refuses to repurchase its products from Cycle Barn. (Id. ¶ 3.8.) It does not appear that Cycle Barn has tendered any products to Arctic Cat. (Id. ¶ 3.9.) Cycle Barn seeks a declaratory judgment requiring Arctic Cat to repurchase its products from Cycle Barn pursuant to the current R.C.W. 46.93.080. Cycle Barn also requests damages resulting from (1) Arctic Cat's alleged violation of R.C.W. 46.93.080, and (2) Arctic Cat's alleged "unfair practices" under R.C.W. 46.93.170 and R.C.W. 19.86. (Compl. at 4-5.) Arctic Cat moves to

dismiss the complaint on the theory that retroactively applying the statute is unconstitutional. (Dkt. No. 7.)

A couple weeks after briefing on the motion to dismiss was complete, Cycle Barn discovered a July 30, 2009, franchise contract between itself and Arctic Cat. (Boltz Decl., Ex. A; Supp. Southey Decl. (Dkt. No. 20), Ex. A.) Cycle Barn moves to submit this contract as evidence in support of its opposition to Arctic Cat's 12(b)(6) motion. (Dkt. No. 18.)

**Analysis**

1. Motion to dismiss standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 545) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal at 1949). The Court must accept plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions. Id. at 1949-150 (citing Twombly at 555). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal. at 1950 (citation omitted).

Generally, "[t]he Court may not consider matters outside the pleadings" without converting the 12(b)(6) motion into a motion for summary judgment. In re Hawaiian &

Guamanian Cabotage Antitrust Litig., 647 F. Supp. 2d 1250, 1267 (W.D. Wash. 2009); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); see Fed. R. Civ. P. 12(d). There are two exceptions to this rule. First, the Court may consider documents not physically attached to the complaint if the documents' "authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation omitted). Second, the Court may "take judicial notice of matters of public record." Id.

2. Cycle Barn's motion to submit additional evidence

Cycle Barn moves to submit additional evidence in support of its opposition to Arctic Cat's motion to dismiss. (Dkt. No. 18.) Specifically, Cycle Barn asks the Court to consider a recently discovered contract between the parties that was signed after R.C.W. 46.93.080 was amended. (Id.) The dealer cites Fed. R. Civ. P. 12(d), 56(f), 6(b)(1), and 60(b)(2), (6) as the authority permitting the Court to consider this new information. (See Dkt. No. 18; see also Dkt. No. 25.) None of these rules are persuasive in this case. The additional contract is not pled in the Complaint and, therefore, it cannot be a part of this Court's Rule 12(b)(6) analysis. The Court DENIES Cycle Barn's motion to submit additional evidence.

3. Impairment of contracts

Arctic Cat contends that Cycle Barn's complaint must be dismissed because its request to apply retroactively R.C.W. 46.93.080 would be an unconstitutional impairment of the parties' agreement. (Dkt. No. 7 at 2.); see U.S. Const. art. I, § 10, cl. 1; see Wash. Const. art. I, § 23. The Court agrees.

Under the United States Contracts Clause, "No state shall . . . pass any . . . law impairing the obligations of contracts." U.S. Const. art. I, § 10, cl. 1. Washington State similarly prohibits the enactment of any "law impairing the obligations of contracts." Wash. Const. art. I, § 23. "It is well-settled that these state and federal constitutional provisions are coextensive and are given

the same effect." Pierce County v. State, 159 Wn.2d 16, 28 n.5 (2006). "[I]n light of the similarity in language," Washington courts "find cases construing the federal provision persuasive in construing the state clause." Carlstrom v. State, 103 Wn.2d 391, 394 (1985). Although the Contracts Clause facially appears absolute, it must be weighed against the State's inherent power to safeguard its people's interests. See RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1147 (9th Cir. 2004) (citation omitted).

The Court uses a three-step inquiry to determine whether a statute violates the Contract Clause. See Washington Health Care Ass'n v. Arnold-Williams, 601 F. Supp. 2d 1224, 1234 (W.D. Wash. 2009) (citing RUI One Corp, 371 F.3d at 1147). The steps, addressed in order, are: (1) "Whether the state law has, in fact, operated as a substantial impairment of a contractual relationship"; (2) "Whether the State, in justification, [has] a significant and legitimate public purpose behind the regulation; and (3) "Whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." 371 F.3d at 1147 (citation omitted).

A. Substantial impairment

The amended version of R.C.W. 46.93.080 operates as a substantial impairment of Arctic Cat and Cycle Barn's agreement. See Arnold-Williams, 601 F. Supp. 2d at 1234 (factor one). In analyzing this factor, the Court asks three questions: (1) "Whether there was a contractual agreement regarding the specific . . . terms allegedly at issue"; (2) "Whether a change in law impairs that contractual relationship"; and (3) "Whether the impairment is substantial." RUI One Corp, 371 F.3d at 1147 (citations omitted).

First, there is a contractual agreement regarding the specific terms at issue. The amendment concentrates on repurchase obligations upon a franchise's termination, see R.C.W. 46.93.080, and the parties' contract and ongoing agreement included terms regarding Arctic

Cat's "right, but not obligation" to repurchase its products upon the termination of the agreement, (Dkt. No. 7 at 4; Stokke Decl., Ex. A ¶ 18; id., Ex. B ¶ 18.) Second, the current statute impairs the contractual agreement by converting Arctic Cat's right to repurchase into an obligation. Third, this impairment is substantial. Since January 1, 2003, the parties operated under their bargained-for contract (or the terms therein), under which Arctic Cat had no obligation to repurchase its products from Cycle Barn. (Stokke Decl., Ex. A ¶ 18; id., Ex. B ¶ 18.) Under the new law, Arctic Cat not only has an obligation to repurchase its products, but it must do so within 90 days of Cycle Barn's unilateral decision to terminate. See R.C.W. 49.93.080. This change constitutes substantial impairment.

B. Public purpose

R.C.W. 46.93 lacks the requisite significant and legitimate public purpose to justify its substantial contractual impairment in this case. See Arnold-Williams, 601 F. Supp. 2d at 1234 (factor two). The Court may weigh five factors in determining whether a sufficient public purpose exists. See Chico's Pizza Franchises, Inc. v. Sisemore, 544 F. Supp. 248, 249 (E.D. Wash. 1981) (citing Allied Structural Steel Co., 438 U.S. at 247-50). The factors, addressed in order, are: "(1) the emergency nature of the legislation; (2) whether the state had previously regulated the subject activity; (3) whether the impact is generalized or specifically directed toward a narrow class; (4) whether the reliance on pre-existing rights was both actual and reasonable; and (5) whether the challenged law worked a severe, permanent, and immediate change in those relationships reasonably relied upon." Chico's Pizza, 544 F. Supp. at 249 (citation omitted).

First, the Court rejects Cycle Barn's assertion that the amendment at issue resulted from a state of economic emergency. (See Dkt. No. 10 at 7.); See Chico's Pizza, 544 F. Supp. at 249 (factor one). The assertion relies on inadmissible declarations of Mr. Halstead, a lobbyist, and

Mr. Condotta, a State Representative, attached to Cycle Barn's response brief. In addition to being inappropriate to consider on a Rule 12(b)(6) motion, the declarations are also inadmissible under Washington law. See City of Yakima v. Int'l Ass'n of Fire Fighters, 117 Wn.2d 655, 677 (1991) (legislative intent in passing a particular bill cannot be illustrated through a legislator's affidavit). Cycle Barn offers no proper evidence of emergency in this case.

Second, Washington did not regulate motorsports franchises prior to the parties' initial agreement, nor does the State heavily regulate motorsports franchises now. See Chico's Pizza, 544 F. Supp. at 249 (factor two). In Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 413 (1983), the Court upheld a Kansas act partly due to "the fact that the parties [were] operating in a heavily regulated industry." See also Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark, 310 U.S. 32, 37 (1940) (upholding a New Jersey statute after noting it was part of a long series of regulations dating back almost 30 years). Here, the parties contracted on January 1, 2003, but the original motorsports statute did not take effect until July 27, 2003. (Compl. ¶ 3.2.); see R.C.W. 46.93. Further, the statute at issue has been in effect for fewer than seven years and is the only Washington statute regulating motorsports franchises. Washington's limited regulation of motorsports franchises does not support a legitimate public purpose in this case.

Third, Cycle Barn contends that R.C.W. 46.93.080 "serves a broad generalized economic and social purpose." (Dkt. No. 10 at 9); see also R.C.W. 46.93.010; see Chico's Pizza, 544 F. Supp. at 249 (factor three). The Court disagrees. In Chico's Pizza, the court concluded that despite the challenged act's potential long term and widespread benefit, "the immediate purpose . . . was to focus on an extremely narrow band of commercial activity." Id. at 250. Here, the statute's partial intent to impact Washington's general economy does not erase the fact that the

amendment directly affects only the narrow class of motorsports manufacturers and dealers. See R.C.W. 46.93.010.

Fourth, Arctic Cat actually and reasonably relied on its "right, but not obligation" to repurchase. See Chico's Pizza, 544 F. Supp. at 249 (factor four). Reliance is established when it appears "that the parties contemplated their respective positions, bargained for the projected benefits, and relied upon the binding nature of the resulting contract," and there is no evidence that the agreement was "speculative or unsettled." See id. at 250. Here, Cycle Barn offers no evidence that the parties' agreement was not binding or that Arctic Cat should not have relied on it up until termination. The Court rejects Cycle Barn's unsupported argument that Arctic Cat waived its right to argue reliance when it failed to terminate the agreement after the amendments were approved in late April and before Cycle Barn terminated in July or August. (Dkt. No. 10 at 10.)

Fifth, R.C.W. 46.93.080 worked a severe, permanent, and immediate change on the parties' relationship. See Chico's Pizza, 544 F. Supp. at 249 (factor five). When Chico's Pizza found that its act severely, permanently, and immediately impacted the contract at issue, the court stated, "As of the stroke of midnight, such contractual expectations became awash in a sea of uncertainty . . . ." The same is true in this case. The law converted a bargained-for right into an unbargained-for obligation. That is a severe change for any business relationship. Further, the impairment is permanent because as long as the relationship continues, and even after termination, Arctic Cat has an obligation to repurchase. Last, the parties' relationship changed immediately. On July 26, 2009, Arctic Cat's contractual choice to repurchase became void and Cycle Barn gained an unbargained-for benefit. The 90 day pay period began running immediately after Cycle Barn terminated the franchise. The changes are severe, permanent, and immediate in this case.

There is no significant and legitimate public purpose behind RCW 46.93 that justifies the substantial impairment of Cycle Barn and Arctic Cat's ongoing contractual relationship.

C. Reasonable adjustment

Because no significant and legitimate purpose justifying the substantial impairment of the parties' contract has been identified, the Court need not address the parties' adjustments in relation to the State's justification. See Campanelli v. Allstate Life Ins. Co., 322 F.3d 1086, 1098 (9th Cir. 2003) (citing Energy Reserves, 459 U.S. at 412); see Arnold-Williams, 601 F. Supp. 2d at 1234 (factor three).

**Conclusion**

First, the Court DENIES Cycle Barn's motion (Dkt. No. 18) to submit additional evidence. Second, confining the Court's analysis to the amended complaint (Dkt. No. 16), the Court GRANTS Arctic Cat's motion to dismiss (Dkt. No. 7) pursuant to Fed. R. Civ. P. 12(b)(6), but does so without prejudice. The Court grants Cycle Barn leave to file an amended complaint in accordance with the terms of this Order within 20 days. If Plaintiff fails to present a viable complaint within the permitted time, judgment shall be entered.

The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 24th day of March, 2010.

Marsha J. Pechman
United States District Judge