UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYCLE BARN INC., <br><br> Plaintiff, <br><br> v. <br><br> ARCTIC CAT SALES INC., <br><br> Defendant. | CASE NO. C10-35 MJP <br><br> ORDER DENYING SUMMARY JUDGMENT |

This comes before the Court on Defendant Arctic Cat's motion for summary judgment (Dkt. No. 68). Having reviewed the motion, the response (Dkt. No. 72), the reply (Dkt. No. 76), and all related filings, the Court DENIES Arctic Cat's motion for summary judgment.

**Background**

Cycle Barn, Inc. ("Cycle Barn") is suing Arctic Cat Sales, Inc. ("Arctic Cat") for failing to comply with Washington's Dealer and Manufacturer Franchises Act ("DMFA"). The DMFA took effect on July 26, 2009 and requires manufacturers to repurchase their motorsport products from dealers within 90 days from termination of their franchise agreements. See RCW 46.93.080.

ORDER DENYING SUMMARY JUDGMENT- 1

Cycle Barn and Arctic Cat Sales entered into a series of dealer agreements beginning in 2003. In early March 2009, Arctic Cat sent a form dealer agreement for Cycle Barn to sign. (Knutson Decl., ¶¶ 3-4.) The form dealer agreement was undated and unsigned. (Id.) It set forth the terms of Cycle Barn's dealer appointment. Specifically, Paragraph 19 stated the requirements for providing notice of termination under the contract, i.e., that notice must be in writing, "delivered by hand, sent by certified mail, return receipt requested, or sent by overnight courier with receipt." (Maidment Decl., Ex. 1.)

On March 17, 2009, Cycle Barn signed the new dealer agreement for the Smokey Point location and sent it back to Arctic Cat. (Maidment Decl., Ex. 1.) Cycle Barn signed it even though Cycle Barn's operations manager Craig Southey ("Southey") had on February 28, 2008 informed Arctic Cat's Western Region Manager, Don Finck ("Finck") that "the Lynwood dealership is not selling AC product, [and that they] need[ed] to talk about terminating our agreement at that location as well as at Smokey Point." (Daley Decl. at Ex. E.) Arctic Cat signed the agreement four months later, on July 30, 2009. (Maidment Decl., Ex. 1.)

In between the time Cycle Barn signed the agreement on March 17, 2009 and Arctic Cat signed the agreement on July 30, 2009, Cycle Barn and Arctic Cat remained in communication regarding Cycle Barn's plans to terminate. In May 2009, Southey emailed Finck notifying him that, "with [the Dealer and Manufacturer Franchises Act's] passing, Cycle Barn will self-terminate with AC at Smokey Point for both ATV and Snowmobile." (Daley Decl. at Ex. B; Ex. A (Southey Dep.) at 162:1-163:3.) In addition, the email states, "I told you in advance about self-terminating only to allow you and [sic] opportunity to either send the product elsewhere or at least start to pick the product up on trucks returning." (Id. at Ex. B.)

On May 21, 2009, Finck acknowledged Cycle Barn's plans to terminate and responded, "you need to send me an email stating you want to terminate you [sic] business with us. Provide a list of your units on a Microsoft Excel file indicating if they are in a crate or out of the crate, for shipping purposes. I will then process the information when the law is in effect. . . From there we make arrangements to pick up." (Southey Decl., Ex. A at 3.)

On June 20, 2009, Southey again emailed Finck, notifying him that Cycle Barn would be terminating all Arctic Cat operations as of July 15, 2009. (Daley Decl., Ex. C.) Southey informed Finck that Cycle Barn had moved all Arctic Cat products off the showroom floor and ceased making efforts to sell the product. (Daley Decl., Ex. A (Southey Dep.) at 168:20-169:16.) At the end of the email, Southey asks Finck, "[i]s this email official enough or do you need something more formal?" (Id.)

On June 22, 2009, Finck responded that Southey's June 20, 2009 email was sufficient notice of Cycle Barn's plan to terminate the agreement and he would begin the paperwork over the next few weeks. (Daley Decl. Ex. P; Ex. A (Southey Dep.) at 180:2-181:4.)

On July 28, 2009, Southey sent another email stating "This is the official notice of termination for Smokey Point Cycle Barn [and] is self terminating as of today July 28, 2009." (Daley Decl. Ex. N.) Southey requested Artic Cat "let [them] know how to proceed with returning all unit and product inventory." (Id.)

On August 11, 2009, Cycle Barn mailed a written notice to Arctic Cat by certified mail. (Southey Decl., Ex. B.) The written notice stated the agreement "is self terminating as of July 28, 2009. (Id.) Arctic Cat responded to the notice with an August 20, 2009 letter stating, "[w]e have been notified of your wish to terminate your Arctic Cat dealership with termination effective immediately." (Southey Decl. Ex. C.)

1   After Cycle Barn terminated the dealer agreement, Arctic Cat continued to ship product
2   that Cycle Barn ordered before terminating.  (Daley Decl. Ex. L (Anderson Dep.) at 73:3-8.)
3   Upon termination, Arctic Cat declined to repurchase all remaining products but agreed to re-
4   purchase these pre-season orders.  (Id.)  Cycle Barn refused the offer.  (Id. at 73:9-14.)

**Discussion**

1. Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

2. DMFA's Applicability to the Dealer Agreement

In its motion for summary judgment, Arctic Cat argues the parties' dealer agreement is not subject to the DMFA because the agreement was executed and terminated before the law took effect on July 26, 2009.  Specifically, Defendant believes (1) the new dealer agreement was

executed when Cycle Barn signed it on March 17, 2009 and (2) Cycle Barn's May and June emails to Finck indisputably terminated the agreement before the DMFA took effect. The Court finds a factual dispute exists as to both arguments, precluding summary judgment.

      a. Dealer Agreement's Execution

The Court finds a factual dispute exists as to whether Cycle Barn executed the new dealer agreement on March 17, 2009. (See Dkt. No. 50 at 4.) By its terms, the parties' dealer agreement is governed by Minnesota law. In Minnesota, an offeror and offeree enter into a contract based on their objective manifestations of mutual assent, "not [on] the subjective thing known as the meeting of the minds." Markmann v. H.A. Bruntjen Co., 81 N.W.2d 858, 862 (Minn. 1957); In re Crablex, Inc., 762 N.W.2d 247, 266 (Minn. Ct. App. 2009).

Here, objective manifestations of mutual assent occurred only after Arctic Cat also signed the agreement on July 30, 2009. While Arctic Cat believes the agreement was executed when Cycle Barn signed it on March 17, 2009, a contract is not formed based on the acceptance of only one party. Neither of the cases Arctic Cat cites are relevant. In St. Paul Fire & Marine Ins. Co. v. Bierwerth, the Minnesota Supreme Court held the parties' customs and practices effectively renewed an insurance policy despite the absence of formal assent. 175 N.W. 2d 136, 141 (Minn. 1970). Arctic Cat has not demonstrated the parties' customs and practices established acceptance when Cycle Barn signed the agreement. Notably, previous agreements between the parties automatically terminated at a specified date. (See Vail Decl., Ex. B at 9.) Likewise, in Commercial Assocs, Inc. v. Work Connection, Inc., the Minnesota appellate court recognized the insured signed and accepted the proposed insurance policy by purchasing it. 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). In the instant case, no transaction occurred here which would confirm mutual assent.

Arctic Cat's statement that the Court previously held the parties' dealer agreement was executed on March 17, 2009 is misleading. In the prior order denying Defendant's motion to dismiss, the Court recognized Cycle Barn <u>signed</u> the agreement on March 17, 2009 but did not state it was <u>executed</u> the same day. In fact, the Court repeatedly referred to the agreement as the "July 30, 2009 agreement." (Dkt. No. 50 at 4.) The Court finds there is sufficient dispute to suggest the dealer agreement was executed after the DMFA took effect; therefore, summary judgment in favor of Defendant is inappropriate.

    b. <u>Cycle Barn's Emails</u>

The Court also finds a genuine issue of material fact as to the significance of Southey's emails to Finck. Defendant's argument that Cycle Barn somehow terminated a single agreement twice, in both May and June 2009, itself suggests a factual dispute exists. While Southey's emails purport to be "official notice" of termination, they also suggest Cycle Barn sought only to give Arctic Cat advanced notice of termination so that Arctic Cat would have the "opportunity to either send the product elsewhere or at least start to pick the product up on trucks returning." (<u>Compare</u> Daley Decl. Ex. B <u>with</u> Southey Decl., Ex. C.)

Likewise, the terminating effect of the emails is questionable given that the signed agreement required written notice and delivery by hand or certified mail. (<u>See</u> Maidment Decl., Ex. 1 at ¶ 19.) Southey's emails do not satisfy the requirement. While Arctic Cat argues it had "the right to waive . . . paragraph 19 [of the agreement]," Arctic Cat's argument relies on an incomplete citation of the agreement's waiver provision. (Dkt. No. 76 at 4.) In its entirety, the provision states, "[t]he waiver or failure of either party to enforce the terms of this Agreement in one instance shall not constitute a waiver of that party's rights under this Agreement with respect to other violations." (<u>Id.</u> at ¶ 21.6.) In other words, the waiver only means a failure to enforce

the written notice requirement did not affect other rights contained in the agreement. Since the provision merely contemplates a party waiving a term of the agreement but does not give the right to do so, Arctic Cat's argument fails.

To the extent Arctic Cat argues that today's business environment allows for notice by email, the Court finds the argument equally unavailing. The agreement, drafted, and signed by Arctic Cat, includes a written notice requirement. If Arctic Cat believes today's business environment allows notices by email, Arctic Cat should have drafted the agreement accordingly. Since Southey's emails do not demonstrate Cycle Barn terminated the agreement prior to it sending Arctic Cat a written notice on August 11, 2009, Defendant's reliance on the emails for summary judgment is misplaced. Whether or not the August 11, 2009 letter also failed to meet the notice requirement is immaterial; the Court finds a genuine issue of fact as to the terminating effect of Southey's May and June emails.

**Conclusion**

The Court DENIES Defendant's motion for summary judgment because factual disputes remain as to whether the agreement was executed and terminated before or after the DMFA took effect.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 22nd day of July, 2011.

Marsha J. Pechman
United States District Judge